**Sallee A. CONOVER, Plaintiff,**

v.

**AETNA US HEALTHCARE, INC. and Aetna Life Insurance Company, Defendants.**

No. 00–CV–559–B(J).

United States District Court, N.D. Oklahoma.

Aug. 2, 2001.

James Edward Poe, Covington & Poe, Tulsa, OK, Joseph F. Clark, Jr., Tulsa, OK, Maynard I. Ungerman, Tulsa, OK, Stephen James Greubel, Tulsa, OK, for plaintiff.

Mark David Spencer, Henry D. Hoss, Cody L. Towns, McAfee & Taft, Oklahoma, OK, for defendant.

## ORDER

BRETT, District Judge.

Comes on for decision Defendants' Motion For Determination Regarding Erisa Pre–Emption and Jury Trial Issues and the Court finds as follows:

### Background [1]

Plaintiff, Sallee Conover ("Conover"), was a participant in a long-term disability insurance plan ("Plan") through her employer, Harcourt General. Inc. All premiums were paid by Conover. The Plan was administered by Aetna U.S. Healthcare and provided supplemental benefits for total disability for a prescribed period of time under the terms and conditions of the Plan. The Plan required certification of disability in lieu of suspension of benefits and advised participants that rights and benefits under the Plan were regulated under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1468.

Conover was reportedly involved in a car accident on November 12, 1997. She applied for benefits under the Plan and was certified as disabled on July 13, 1998. Under the terms of the Plan, Conover became eligible for disability benefits on January 11, 1999, and benefits were paid to her thereafter on a monthly basis. In May, 1999, Conover underwent a Functional Capacity Evaluation as part of her continuing certification process. The evaluation concluded that she could perform the material duties of her occupation with her employer. Therefore, she was no longer eligible for benefits. Plaintiff was notified of the suspension of her benefits on August 6, 1999. This lawsuit was filed in Tulsa County District Court and subsequently removed to this Court.

### Issues Presented

Defendants filed a motion for specialized case management conference under the administrative review framework of ERISA. At the regularly scheduled case management conference which followed, the Court addressed various issues regarding ERISA'S applicability to the case at bar and the Court ordered briefing on two issues: whether ERISA pre-empts Plaintiff's state law claims, and whether a jury trial is permitted.

The pertinent issue in determining whether Plaintiff's state law claims are pre-empted is whether the United States Supreme Court in *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) alters the binding precedent of *Gaylor v. John Hancock Mutual Life Ins. Co.*, 112 F.3d 460 (10th Cir.1997). In *Gaylor*, the Tenth Circuit held that "Oklahoma's bad faith law does not sufficiently regulate insurance such that it falls within ERISA's saving clause,"[2] and therefore is preempted by

---

**1.** The background is substantially taken from Defendants Motion For Specialized Case Management, prepared without input by Plaintiff, and is included only to provide a general statement of the dispute. Some facts were added from Plaintiff's brief in opposition to Defendant's Motion for Determination Regarding Erisa issues.

**2.** The saving clause states in pertinent part:

[N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance . . . .

29 U.S.C. § 1144(b)(2)(A)

ERISA. *Id.* at 466. In so holding, the circuit court applied the test set forth in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 48–49, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), which includes an analysis of the three McCarran–Ferguson factors:

> ... whether the state law (1) has the effect of transferring or spreading a policyholder's risk; (2) is an integral part of the policy relationship between the insurer and the insured; and (3) is limited to entities within the insurance industry.

*Id.* at 465. The Tenth Circuit determined that while Oklahoma's bad faith law is "specifically directed at the insurance industry," it is not an integral part of the policy relationship between the insurer and insured, does not effect a change in the risk borne by either party and, like Mississippi's bad faith law in *Pilot Life,* has "its origins ... [in] general principles of tort and contract law."[3] *Id.* Guided by *Gaylor,* this Court has previously held that ERISA preempts the Oklahoma common law claim recognized in *Christian v. American Home Assurance Co.,* 577 P.2d 899 (Okla.1977), as the claim does not fall within the ERISA saving clause. *See e.g. Richard Lee Smith v. Sun Life Assurance Co. of Canada,* 98–CV–418–B(E) (removal proper in non-diversity case which states only state law claims of breach of contract and bad faith denial of long-term disability benefits under insurance policy due to ERISA preemption).

In *Lewis v. Aetna U.S. Healthcare, Inc.,* 78 F.Supp.2d 1202 (N.D.Okla.1999), Judge Holmes of this Court held otherwise and effectively determined *UNUM* supersedes or alters *Gaylor's* holding that Oklahoma's bad faith law is preempted by ERISA. *Id.* at 1214–15. In *UNUM,* the Supreme Court expressly rejected the proposition that a state law must satisfy all three McCarran–Ferguson factors to fall within the saving clause, characterizing the factors as "considerations [to be] weighed," none of which is determinative in itself.[4] *UNUM,* 526 U.S. at 373, 119 S.Ct. 1380 (quoting *Pilot Life,* 481 U.S. at 49, 107 S.Ct. 1549). The *UNUM* Court reiterated the test to determine whether a state law falls within the saving clause as set forth in *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985):

> *Metropolitan Life* asked first whether the law there in question "fit a common-sense understanding of insurance regulation," ... and then looked to the McCarran–Ferguson factors as checking points or "guideposts, not separate essential elements ... that must each be satisfied" to save the State's law.

*UNUM,* 526 U.S. at 374, 119 S.Ct. 1380 (citations omitted). Applying this test, the *UNUM* Court concluded California's notice-prejudice rule is a state law that regulates insurance. Although the rule does not meet the first McCarran–Ferguson factor of transferring or spreading a policyholder's risk, the Supreme Court concluded it is, as a matter of common sense, a rule that regulates insurance, serves as an integral part of the policy relationship between the insurer and insured, and is limited to the insurance industry, thus

---

**3.** The Mississippi bad faith law at issue in *Pilot Life,* however, was applicable to any breach of contract, while the *Christian* tort is limited to insurance contracts.

**4.** The state law at issue in *UNUM* was California's common law notice-prejudice rule which requires the insurer to prove it suffered actual prejudice in its defense of an insured's failure to give timely notice of a claim. As noted by the *UNUM* Court, "[c]ommon-law rules developed by decisions of state courts are 'State law' under ERISA." *UNUM,* 526 U.S. at 367 n. 1, 119 S.Ct. 1380; *see also* 29 U.S.C. § 1144(c)(1) ("The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.").

meeting two of the three McCarran–Ferguson factors, and "verifying the common-sense view." *Id.* at 374–75, 119 S.Ct. 1380. Applying this same analysis to a *Christian* tort, Judge Holmes in *Lewis* held the Oklahoma law, like the notice-prejudice rule in *UNUM,* "regulates insurance from a common sense view of the matter," and meets the second and third McCarran–Ferguson factors. Therefore, contrary to the holding in *Gaylor,* Judge Holmes concluded Oklahoma's bad faith rule is a state law that regulates insurance. *Lewis,* 78 F.Supp.2d at 1214–15.

■ While the Tenth Circuit in *Gaylor* applied a less "supple" test in its analysis of Oklahoma's bad faith rule than that applied in *UNUM* to California's notice-prejudice rule,[5] the Court is not persuaded the *Gaylor* test is enough at odds with *UNUM* to free the Court from *Gaylor's* dictates. The Tenth Circuit in *Gaylor* concluded Oklahoma's bad faith rule did not "regulate insurance" based on the following analysis:

> Our application of the three-part test in *Pilot Life,* as well as previous cases applying the test to similar state laws, indicates that Oklahoma's bad faith law does not sufficiently regulate insurance such that it falls within ERISA's saving clause. Oklahoma's bad faith law does not regulate the spreading of policyholder risk.... A law which defines the manner in which insurance claims should be processed declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow

the policyholder to obtain [consequential and] punitive damages.... Such a law thus does not effect a change in the risk borne by insurers and the insured, because it does not affect the substantive terms of the insurance contract. On the other hand, a law mandating that a certain disease be covered under health insurance contracts would effect a spread of risk, both from insureds to insurers and among the insureds themselves.... For substantially the same reasons, we hold that Oklahoma's bad faith law also does not satisfy the second prong of *Pilot Life.*... Finally, although Oklahoma's bad faith law is specifically directed at the insurance industry, we note that, like the bad faith law in *Pilot Life,* its origins are from general principles of tort and contract law....

Finally, we note that in holding that Mississippi's bad faith law was not saved, the *Pilot Life* court concluded that the civil enforcement provisions of ERISA § 1132(a) were intended to be the "exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits".... As Ms. Gaylor notes in her own brief, Oklahoma's bad faith law is designed to provide causes of action for the improper processing of a claim for benefits.... Thus, Ms. Gaylor's claim under Oklahoma's bad faith law is a claim within the scope of ERISA § 1132(a) and "would pose an obstacle to the purposes and objectives of Congress."[6]

---

**5.** *See UNUM,* 526 U.S. at 373, 119 S.Ct. 1380 (rejecting the assertion that a state regulation must satisfy all three McCarran–Ferguson factors to fall within ERISA's saving clause as less "supple" than Supreme Court precedent requires).

**6.** The Court questions the relevance of a conflict with the civil enforcement provisions of

ERISA in a state-law exemption analysis. Under ERISA, a state law which regulates insurance is expressly exempted from preemption. ERISA does not dictate a state law which regulates insurance is exempt *unless* it provides a state law cause of action or remedy. *See UNUM,* 526 U.S. at 377 n. 7, 119 S.Ct. 1380 (discussing but not deciding this issue).

*Gaylor*, 112 F.3d at 466 (citations omitted). Thus, from the Court's reading of *Gaylor*, Oklahoma's bad faith rule does not meet the first and second McCarran–Ferguson factors, and the third is undermined by the rule's "origins" in general principles of tort and contract law. Judge Holmes, contrarily, concluded the second and third factors, together with a common sense understanding that the rule regulates insurance, weigh in favor of inclusion of a *Christian* tort within the saving clause. Although *UNUM* certainly emphasizes the McCarran–Ferguson factors are "guideposts" and not required elements of inclusion within the ambit of ERISA's saving clause, the Court is not convinced a post-*UNUM* decision by the Tenth Circuit would invalidate *Gaylor*. Regardless of whether the Court agrees with the analysis in *Lewis*, the Court is bound to follow *Gaylor*, until the issue is revisited by the Tenth Circuit or the United States Supreme Court. *See Campbell v. Guarantee Life Ins. Co.*, 99–279–S (E.D.Okla.1999)(dismissing *Christian* tort claim, concluding "[t]he Tenth Circuit's application of the *Pilot Life* framework in *Gaylor* in the context of Oklahoma's bad faith law remains unaffected by *UNUM* "); *Bryant v. American Medical Security et al.*, CIV-00-144–R (W.D.Okla.2000)(the court is bound by *Gaylor's* holding that "Oklahoma's bad faith law does not sufficiently 'regulate insurance' to fall within ERISA's savings clause"); *but see Hill v. Blue Cross Blue Shield of Alabama*, 117 F.Supp.2d 1209 (N.D.Ala.2000)(remanding case which alleged bad faith breach of insurance policy, holding that Alabama's state law tort claim of bad faith is exempt from ERISA pre-emption under the "saving clause" according to *UNUM*).

■ The Tenth Circuit has also foreclosed a federal common law remedy of extracontractual damages for a denial of benefits under an ERISA plan.[7] *Zimmerman v. Sloss Equipment, Inc.*, 72 F.3d 822 (10th Cir.1995). The plaintiff in *Zimmerman* had argued the Supreme Court decision in *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) permits the courts to fashion remedies beyond the payment of unpaid benefits. *Id.* at 827–28 (*quoting Ingersoll–Rand*, 498 U.S. at 145, 111 S.Ct. 478 ("Not only is § 502(a) the exclusive remedy for vindicating § 510–protected rights, but there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek 'pension benefits.' It is clear that the relief requested here is well within the power of federal courts to provide.")). In rejecting that argument, the *Zimmerman* court concluded:

> This interpretation of *Ingersoll–Rand* is foreclosed by prior decisions of this court. We have previously held that punitive damages are not available in an ERISA action. *Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 888 n. 2 (10th Cir.1988). We have also held that nothing in section 502(a)(1)(B) supports damages beyond that section's language authorizing recovery of "benefits due ... under the terms of the plan." *See Alexander v. Anheuser–Busch Companies, Inc.*, 990 F.2d 536, 539 (10th Cir.1993) ... Moreover, we have ruled that compensatory damages are not available under section

---

**7.** Section 502 provides the civil remedies for violation of ERISA, 29 U.S.C. § 1132. Under subsection 502(a)(1)(B), a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Subsection 502(a)(3)(B) authorizes civil actions "to obtain other appropriate equitable relief (i) to redress ... violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B).

502(a)(3)(B). *Lafoy v. HMO Colorado,* 988 F.2d 97, 99–101 (10th Cir.1993)... We held in *Lafoy* that although "allowing extra-contractual relief may be supportable on grounds of policy and justice, ... the plain history of the statute, the legislative history, and the majority's ruling in *Russell* [*Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) ][8] counsel otherwise."

*Id.* at 828 (citation omitted); *see also Nero v. Industrial Molding Corp.,* 167 F.3d 921 (5th Cir.1999) (out-of-pocket expenses not recoverable under § 502(a)(3)); *Harsch v. Eisenberg,* 956 F.2d 651 (7th Cir.), *cert. denied,* 506 U.S. 818, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992) (extracontractual damages unavailable under § 502(a)(1)(B)). Based on Tenth Circuit precedent, therefore, the Court is precluded from creating a federal common law remedy for extra-contractual damages under ERISA.

 The Court further concludes Plaintiff is not entitled to a jury trial. *See Adams v. Cyprus Amax Minerals Co.,* 149 F.3d 1156 (10th Cir.1998)("[T]he recovery of benefits is better characterized as equitable/restitutionary versus legal/compensatory relief" and therefore, the Seventh Amendment does not entitled plaintiff to a jury trial.). In view of the above, the Court grants Defendant's Motion for Specialized Case Management and sets a new

scheduling conference for the 7th day of Sept., 2001 at 1:30 p.m.

---

8. In *Russell,* the Supreme Court explained the remedies available in § 502(a) of ERISA:

The six carefully integrated civil enforcement provisions found in § 502(a) as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in

turn part of a "comprehensive and reticulated statute."

...

We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.... "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."

*Russell,* 473 U.S. at 146–48, 105 S.Ct. 3085 (citations and footnotes omitted).