**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 20 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SALLEE A. CONOVER,

      Plaintiff-Appellant,

v.

AETNA US HEALTH CARE, INC.;
AETNA LIFE INSURANCE
COMPANY,

      Defendants-Appellees.

No. 01-5172

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 00-CV-559-B)**

---

Joseph F. Clark, Jr., Tulsa, Oklahoma, for Plaintiff-Appellant.

Mark D. Spencer (Henry D. Hoss and Amy T. Kranenburg) of McAfee & Taft,
P.C., Oklahoma City, Oklahoma, for Defendants-Appellees.

---

Before **O'BRIEN** and **McWILLIAMS**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

---

**BRORBY**, Senior Circuit Judge.

---

Ms. Sallee Conover appeals from a district court decision holding her state law bad faith claim is preempted under the Employee Retirement Income Security Act. *See Conover v. Aetna U.S. Healthcare, Inc.*, 167 F. Supp.2d 1317 (N.D. Okla. 2001). Ms. Conover argues her claim is not preempted because the Act saves "any law of any State which regulates insurance." *See* 29 U.S.C. § 1144(b)(2)(A). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

Ms. Conover was a participant in a long-term disability insurance plan through her employer. The plan was administered by Aetna US Healthcare. Ms. Conover was injured in a car accident and submitted a claim to Aetna for disability benefits. Aetna approved her claim and began making monthly benefit payments to her. After further investigation, however, Aetna determined Ms. Conover could perform the material duties of her occupation and suspended her benefits. Ms. Conover responded by filing this lawsuit in Tulsa County District Court, alleging intentional breach of contract and bad faith. The bad faith cause of action was based on Oklahoma state law. Aetna removed the case to the United States District Court for the Northern District of Oklahoma.

A few months later, Aetna reviewed additional information regarding Ms.

Conover's claim for disability benefits and determined she remained eligible for the benefits. Aetna reinstated her benefits and paid all back benefits due. This rendered moot Ms. Conover's cause of action for intentional breach of contract. Around the same time, Aetna moved the district court for a determination regarding preemption under the Employee Retirement Income Security Act. In addressing the motion, the district court ruled the Act preempted Ms. Conover's bad faith cause of action. *See Conover*, 167 F. Supp.2d at 1318-21. The court subsequently entered final judgement for Aetna, and Ms. Conover appeals.

Ms. Conover argues her bad faith claim is not preempted under the Employee Retirement Income Security Act.[1] We review this question de novo because it involves an issue of law. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 989 (10th Cir. 1999).

The Employee Retirement Income Security Act preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

---

[1] Ms. Conover also argues the Supreme Court's decision in *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990), permits us to award extra-contractual damages in Employee Retirement Income Security Act actions, including mental anguish and punitive damages. This argument is foreclosed by our decision in *Zimmerman v. Sloss Equipment, Inc.*, 72 F.3d 822, 827-829 (10th Cir. 1995).

29 U.S.C. § 1144(a). The Act, however, saves from preemption state laws "regulat[ing] insurance." 29 U.S.C. § 1144(b)(2)(A). In determining whether a state law regulates insurance, we follow the two-step inquiry set forth by the Supreme Court in *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724 (1985). We first inquire whether, from a "common-sense view of the matter," the state law regulates insurance. *Id*. at 740; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987). We then test this result against three factors derived from case law interpreting the McCarran-Ferguson Act, 15 U.S.C. § 1012(a) & (b): "*first*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry." *Metropolitan Life*, 471 U.S. at 743 (quotation marks and citation omitted); *Pilot Life*, 481 U.S. at 48-49. All three McCarran-Ferguson factors need not be met in order for a state law to regulate insurance. *See Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, ___, 122 S. Ct. 2151, 2163 (2002); *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 373 (1999). Instead, these factors should be "weighed" and serve as "guideposts" in determining whether a state law regulates insurance. *Rush Prudential*, 122 S. Ct. at 2163; *Ward*, 526 U.S. at 373-74. If after applying this two-part inquiry, we are satisfied the state law regulates insurance, it is saved

-4-

from preemption under the Act.  *See* 29 U.S.C. § 1144(b)(2)(A).  This does not, however, end our preemption analysis.

A state law otherwise regulating insurance within the meaning of § 514(b)(2)(A) may still be preempted if it allows plan participants and beneficiaries "to obtain remedies under state law that Congress rejected in [the Employee Retirement Income Security Act]."  *Pilot Life*, 481 U.S. at 54, 57; *Rush Prudential*, 122 S. Ct. at 2165.[2]  The Act sets forth "'six carefully integrated civil enforcement provisions.'"  *Pilot Life*, 481 U.S. at 54 (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)).  *See also* 29 U.S.C. § 1132(a).  Under these provisions, a plan participant or beneficiary may bring a civil action

---

[2]  Ms. Conover suggests the Supreme Court impliedly overruled this portion of the *Pilot Life* decision in *Ward*, 526 U.S. at 376 n.7.  We disagree for three reasons.  First, the Supreme Court instructed us to avoid concluding its "more recent cases have, by implication, overruled an earlier precedent."  *Agostini v. Felton*, 521 U.S. 203, 237 (1997).  Rather, we "should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions."  *Id.* (quotation marks and citation omitted).  Second, the Court in *Ward* noted but did not address the Solicitor General's argument that *Pilot Life* does not hold a state law regulating insurance is nevertheless preempted if it provides a state law cause of action or remedy.  *See Ward*, 526 U.S. at 376 n.7.  Third, the Supreme Court reaffirmed this portion of the *Pilot Life* decision in a later decision, stating a state law is preempted if it "allows plan participants to obtain remedies ... that Congress rejected in [the Employee Retirement Income Security Act]."  *Rush Prudential*, 122 S. Ct. at 2165 (quoting *Pilot Life*, 481 U.S. at 54).

to recover benefits due, enforce rights, or clarify future benefits under the terms of the plan. *See* 29 U.S.C. § 1132(a)(1)(B). A plan participant or beneficiary may also bring an action to enforce provisions of the plan or Act, to enjoin or redress violations of the Act, or to remove the fiduciary for breach of fiduciary duty. *See* 29 U.S.C. §§ 1132(a)(1)(A), 1132(a)(3), and 1109(a). In an action under these civil enforcement provisions, a court may, in its discretion, award attorney's fees and costs to either party. *See* 29 U.S.C. § 1132(g)(1). The Supreme Court held these civil enforcement provisions are "exclusive." *Pilot Life*, 481 U.S. at 52, 54. Therefore, if a state law "add[s] to the judicial remedies" available under the Act, the law is preempted. *Rush Prudential*, 122 S. Ct. at 2166.

It is undisputed Oklahoma's bad faith law falls within the Employee Retirement Income Security Act's language preempting state laws related to "any employee benefit plan." 29 U.S.C. § 1144(a). Oklahoma's bad faith law imposes on insurers "an implied duty to deal fairly and act in good faith with its insured." *Christian v. American Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977). A "violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Id.* Ms. Conover argues Oklahoma's bad faith law is saved from preemption under the Act because it

"regulates insurance." *See* 29 U.S.C. § 1144(b)(2)(A). We disagree. This court addressed this issue in *Gaylor v. John Hancock Mutual Life Insurance Co.*, 112 F.3d 460, 466 (10th Cir. 1997), holding "Oklahoma's bad faith law does not sufficiently regulate insurance such that it falls within [the Act]'s saving clause." We are bound by this decision. *See Burlington N. & Santa Fe Ry. Co. v. Burton*, 270 F.3d 942, 947 (10th Cir. 2001), *cert denied*, 122 S. Ct. 2664 (2002).

Ms. Conover nonetheless suggests Oklahoma's bad faith law regulates insurance from a common-sense view because it "homes in on the insurance industry." *See Ward*, 526 U.S. at 359. We disagree. Even though Oklahoma's Supreme Court has associated its bad faith law with the insurance industry, "its origins are from general principles of tort and contract law." *Gaylor*, 112 F.3d at 466. Oklahoma's Supreme Court also recognized "'[t]here is an implied covenant of good faith and fair dealing in every contract.'" *Christian*, 577 P.2d at 904 (quoting *Gruenberg v. Aetna Ins. Co.*, 108 Cal. Rptr. 480, 484 (Cal. 1973)). Breach of any contract, and not just an insurance contract, may lead to liability in tort under Oklahoma law. *See, e.g.*, *Beshara v. Southern Nat'l Bank*, 928 P.2d 280, 291 (Okla. 1996) ("When the factual situation warrants, an action for a breach of contract may also give rise to a tort action for a breach of the implied covenant of good faith and fair dealing."). Consequently, Oklahoma's bad faith

law does not home in only on the insurance industry. *See Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1236 (10th Cir. 2002).

Ms. Conover also argues *Gaylor* is not controlling because it "rigidly applied" the McCarran-Ferguson factors, putting "undue emphasis on the [first McCarran-Ferguson] requirement that a law spread the risk among policy holders in order for it to qualify for the [Employee Retirement Income Security Act] saving clause." She claims a more "pliable approach" should be used in light of the subsequent Supreme Court decisions in *Rush Prudential* and *Ward*. The Court in these decisions clarified "the McCarran-Ferguson factors are considerations [to be] weighed in determining whether a state law regulates insurance"; a state law need not "satisfy all three McCarran-Ferguson factors in order to regulate insurance." *Ward*, 526 U.S. at 373 (quotation marks and citation omitted). *See also Rush Prudential*, 122 S. Ct. at 2163.

While we, of course, agree all three McCarran-Ferguson factors need not be satisfied for a state law to regulate insurance, *see Moffett*, 291 F.3d at 1236, we disagree with Ms. Conover's suggestion these later Supreme Court decisions undermine our holding in *Gaylor*. The *Gaylor* court did not put "undue emphasis" on any particular McCarran-Ferguson factor in reaching its decision.

Instead, the court concluded Oklahoma's bad faith law did not meet the first and second McCarran-Ferguson factors, and the third factor was undermined because the law's origins were "from general principles of tort and contract law." *Gaylor*, 112 F.3d at 466. In contrast, the Supreme Court in both *Rush Prudential* and *Ward* held the saving clause to apply, even though the first McCarran-Ferguson factor was arguably not met, only after finding the other two factors were "clearly" or "securely" satisfied. *Rush Prudential*, 122 S. Ct. at 2163; *Ward*, 526 U.S. at 364.[3]

Furthermore, the court in *Gaylor* concluded Oklahoma's bad faith law provided a cause of action excluded from the Employee Retirement Income Security Act's civil enforcement scheme and would therefore "pose an obstacle to the purposes and objectives of Congress." *Gaylor*, 112 F.3d at 466 (quoting *Pilot Life*, 481 U.S. at 52).[4] Oklahoma's law allows plan participants to obtain

---

[3] Even after the Supreme Court's decision in *Ward*, this court reaffirmed that a state law does not regulate insurance if it does not meet the first two McCarran-Ferguson factors, and the third factor is undermined because the law (although associated with the insurance industry) has its roots in tort and contract law. *See Moffett*, 291 F.3d at 1236-37.

[4] Ms. Conover disagrees, arguing Oklahoma's bad faith law does not conflict with the Employee Retirement Income Security Act's civil enforcement scheme. Ms. Conover claims "[t]he only way for [the Act] to properly meet its stated goal is for companies to face the type of sanctions and insureds to have the type of relief contemplated by [Oklahoma's bad faith law]." Once again,

"consequential and, in a proper case, punitive, damages" for breach of good faith and fair dealing by an insurer. *Christian*, 577 P.2d at 904. Nowhere does the Employee Retirement Income Security Act allow consequential or punitive damages. Damages are limited to the recovery of "benefits due ... under the terms of the plan." *See* 29 U.S.C. § 1132(a)(1)(B). Oklahoma's bad faith law therefore "allows plan participants to obtain remedies ... that Congress rejected in the Act." *Rush Prudential,* 122 S. Ct. at 2165 (quoting *Pilot Life*, 481 U.S. at 54) (quotation marks omitted).

In sum, we conclude *Gaylor* still controls the resolution of this case. Oklahoma's bad faith law is not saved from preemption under Employee Retirement Income Security Act because it does not "regulate[] insurance." 29 U.S.C. § 1144(b)(2)(A). Oklahoma's bad faith law is therefore preempted because it "relate[s] to an employee benefit plan" and conflicts with the Employee Retirement Income Security Act's civil enforcement scheme. *See* 29 U.S.C. §§ 1144(a) and 1132(a). We **AFFIRM** the district court's decision.

---

however, Ms. Conover's argument is foreclosed by our decision in *Gaylor*, 112 F.3d at 466. Ms. Conover's argument is also contrary to Supreme Court decisions holding the Act's civil enforcement scheme is exclusive. *See Rush Prudential,* 122 S. Ct. at 2165-66; *Ingersoll-Rand*, 498 U.S. at 144; *Pilot Life*, 481 U.S. at 52, 54; *Russell*, 473 U.S. at 146.