PAUL KELLY, JR., Circuit Judge.
Plaintiff/Cross-Appellee Jon Kidneigh and Plaintiff-Appellant/Cross-Appellee Barbara Kidneigh brought suit seeking disability benefits pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and (g), the Employment Retirement Income Security Act of 1974 (“ERISA”), along with state law claims for bad faith and loss of consortium. We have jurisdiction under 28 U.S.C. § 1292(b), and we affirm in part and reverse in part.

Background

Plaintiff Jon Kidneigh brought a claim against UNUM Life Insurance Co. (“UNUM”) seeking disability benefits pursuant to §§ 1132(a)(1)(B) and (g) of the Employment Retirement Income Security Act of 1974 (“ERISA”). UNUM is the claims administrator of a long-term disability plan covering employees of the law firm of Kidneigh & Kaufman, P.C. Though UNUM paid disability benefits to Mr. Kid-neigh after a series of back and hernia surgeries, UNUM stopped paying benefits on March 31, 1999, after determining that Mr. Kidneigh was physically capable of performing his job as an attorney.
Mr. Kidneigh also brought a state law claim for bad faith along with the direct ERISA claim seeking continued benefits, and his wife brought a state law claim for loss of consortium. UNUM moved to dismiss Mr. Kidneigh’s bad faith claim and Mrs. Kidneigh’s loss of consortium claim *1184 on the grounds that both are preempted by ERISA. The district court denied the motion with respect to Mr. Kidneigh but granted the motion with respect to Mrs. Kidneigh. The district court granted an unopposed motion for interlocutory appeal brought pursuant to Fed.R.Civ.P. 52(b), finding that the issue “involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.” 28 U.S.C. § 1292(b). Both Mrs. Kidneigh and UNUM appeal from the district court’s order; Mrs. Kidneigh appeals from the dismissal of her loss of consortium claim, and UNUM appeals from the denial of the motion to dismiss Mr. Kidneigh’s bad faith claim.

Discussion

Because the scope of ERISA preemption is a question of law, the district court’s decision is subject to de novo review. Conover v. Aetna U.S. Health Care, Inc., 320 F.3d 1076, 1077 (10th Cir.2003).
“[A]ny court forced to enter the ERISA preemption thicket sets out on a treacherous path.” Gonzales v. Prudential Ins. Co., 901 F.2d 446, 451-52 (5th Cir.1990). In this case we must resolve whether a Colorado state law bad faith claim against an employment disability insurance provider is preempted by ERISA. A secondary issue is whether a spouse’s derivative loss of consortium claim is also preempted by ERISA.
The issue here is one that frequently confronts the federal courts due to ERISA’s “statutory complexity.” Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 740, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). ERISA’s preemption clause broadly states that “[ejxeept as provided in subsection (b) of this section, the provisions of this sub-chapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.” 29 U.S.C. § 1144(a). What Congress took away with one hand, however, it gave back with the other as contained in ERISA’s saving clause: “Except as provided in sub-paragraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.” Id. § 1144(b)(2)(A). Subparagraph (B) (the deemer clause), in turn, provides:
Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.
Id. § 1144(b)(2)(B). As summarized by the Supreme Court:
If a state law “relate[sj to ... employee benefit plan[sj,” it is pre-empted. The saving clause excepts from the pre-emption clause laws that “regulat[ej insurance.” The deemer clause makes clear that a state law that “purports] to regulate insurance” cannot deem an employee benefit plan to be an insurance company.
Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (citations omitted). The Supreme Court has further noted that “[tjhe pre-emption clause is conspicuous for its breadth,” FMC Corp. v. Holliday, 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), and that “the express pre-emption provisions of ERISA are deliberately expansive, and designed to ‘establish pension plan regulation as exclusively a federal concern.’ ” Pilot Life, 481 U.S. at 45-46, 107 S.Ct. 1549.
*1185 In addition to Congress’s power to “define explicitly the extent to which its enactments pre-empt state law,” a state law can also be preempted “to the extent that it actually conflicts with federal law.” English v. Gen. Elec. Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Where a state law “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,” then the state law is preempted. Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). State law causes of action, then, are preempted under ERISA both when they are expressly preempted by the terms of the statute as well as when the state law provides remedies beyond those contained in ERISA itself. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143-44, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); Pilot Life, 481 U.S. at 54, 107 S.Ct. 1549 (“The deliberate care with which ERISA’s civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA’s civil enforcement remedies were intended to be exclusive.”). The Supreme Court has noted that a distinction can be drawn between cases involving an “additional claim or remedy,” such as Pilot Life, and cases “bearfing] a resemblance to the claims-procedure rule” sustained in UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 368, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 380, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002). Cases on the former side of the distinction fall within “Pilot Life’s categorical preemption.” Id.
We hold that Colorado bad faith claims are preempted by ERISA because they conflict with ERISA’s remedial scheme. State law bad faith claims such as the Colorado claim in this case — insofar as they provide an “additional claim” to plaintiffs — clearly fall on the former side of the distinction drawn in Rush Prudential and “fit within the category of state laws Pilot Life had held to be incompatible with ERISA’s enforcement scheme” by “providing] a form of ultimate relief in a judicial forum that add[s] to the judicial remedies provided by ERISA.” Id. at 379, 122 S.Ct. 2151.
As this court explained recently, “Nowhere does [ERISA] allow consequential or punitive damages. Damages are limited to the recovery of ‘benefits due ... under the terms of the plan.’ ” Conover, 320 F.3d at 1080 (alteration in original). The Oklahoma bad faith claim in Conover, like the Colorado bad faith claim here, “allows plan participants to obtain ‘consequential and, in a proper case, punitive, damages’ for breach of good faith and fair dealing by an insurer.” Id. Where such damages are available, they “provide[] a cause of action excluded from [ERISA’s] civil enforcement scheme and would therefore ‘pose an obstacle to the purposes and objectives of Congress.’ ” Id. (quoting Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 466 (10th Cir.1997)); see also Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1237 (10th Cir.2002).
The Supreme Court has strongly indicated in dicta that a state law falling within ERISA’s savings clause (“nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance,” 29 U.S.C. § 1144(b)(2)(A)) would still be preempted merely by providing remedies beyond those prescribed in ERISA. See Rush Prudential, 536 U.S. at 377, 122 S.Ct. 2151 (2002) (“Although we have yet to encounter a forced choice between the congressional policies of exclusively federal remedies and the ‘reservation of the business of insurance to the States,’ we have anticipated such a conflict, with the state insurance regulation losing out if it allows *1186 plan participants ‘to obtain remedies ... that Congress rejected in ERISA.’ ”) (citations omitted). In addition to being preempted due to conflict with ERISA’s remedial scheme, we are persuaded that— in the alternative — the Colorado bad faith claim in this case does not fall within ERISA’s savings clause, and as such is expressly preempted.
It is undisputed that the Kid-neighs’ claims “relate” to an employee benefit plan, and so our inquiry on this aspect of preemption moves to the second phase of determining whether Colorado bad faith law “regulates insurance.” In light of the case law in this area, our conclusion is that it does not. The Supreme Court’s recent decision in Kentucky Ass’n of Health Plans, Inc. v. Miller, — U.S. —, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003) (holding Kentucky’s “Any Willing Provider” statute not preempted by ERISA), substantially clarified the test for determining when a state law is not preempted by ERISA because it “regulates insurance” under § 1144(b)(2)(A): “First, the state law must be specifically directed toward entities engaged in insurance,” and “[sjecond ... the state law must substantially affect the risk pooling arrangement between the insurer and the insured.” — U.S. at -, 123 S.Ct. at 1479.
Tested against these two factors, we hold, as noted above, that a Colorado state law bad faith cause of action against an ERISA provider is expressly preempted. In order to be characterized as a state law “regulating insurance,” the law must not “just have an impact on the insurance industry” but must be “specifically directed toward that industry.” Pilot Life, 481 U.S. at 50, 107 S.Ct. 1549. Stated otherwise, the state law must “home[ ] in on the insurance industry.” Ward, 526 U.S. at 368, 119 S.Ct. 1380.
The Colorado courts do appear to have largely (but, importantly, not exclusively) confined bad faith causes of action to the insurance setting. See Dale v. Guar. Nat’l Ins. Co., 948 P.2d 545, 552 (Colo.1997); Vaughan v. McMinn, 945 P.2d 404, 406 (Colo.1997). But see Rogers v. Westerman Farm Co., 29 P.3d 887, 908 (Colo.2001) (bad faith claim applied to oil and gas leases); Amoco Oil Co. v. Ervin, 908 P.2d 493, 498 (Colo.1995) (“Colorado, like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing.... The good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations.”) (emphasis added). Even if the Colorado state courts had limited bad faith claims to the insurance context, however, that fact alone would not save Colorado bad faith claims from ERISA preemption. The Supreme Court’s Pilot Life decision, in which Mississippi’s bad faith cause of action was held to be preempted by ERISA, dealt with a state bad faith law apparently confined by a state supreme court to insurance contracts. “Even though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law,” and so the Court held that the Mississippi law did not “regulate insurance.” 481 U.S. at 50, 107 S.Ct. 1549; see also Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 466 (10th Cir.1997) (“[Ajlthough Oklahoma’s bad faith law is specifically directed at the insurance industry, we note that, like the bad faith law in Pilot Life, its origins are from general principles of tort and contract law.”); Halprin v. Equitable Life Assurance Soc., 267 F.Supp.2d 1030, 1038 (D.Colo.2003)[1] (following Kelley v. *1187 Sears, Roebuck & Co., 882 F.2d 458 (10th Cir.1989), and holding Colorado’s bad faith law preempted; subsequent Colorado ease law developments merely described, but did not change, the development of bad faith).
As to the second factor in ERISA express preemption analysis, Pilot Life and other ERISA preemption cases show that state bad faith claims do not “substantially affect the risk pooling arrangement” between insurers and their insureds, which is the hallmark of insurance contracts. See SEC v. Variable Annuity Life Ins. Co. of Am., 359 U.S. 65, 73, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959). State law bad faith claims are not integral to the risk pooling arrangement for the reasons summarized in Pilot Life:
In contrast to the mandated-benefits law in Metropolitan Life, the common law of bad faith does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages. The state common law of bad faith is therefore no more “integral” to the insurer-insured relationship than any State’s general contract law is integral to a contract made in that State.
481 U.S. at 51, 107 S.Ct. 1549.
Any-willing provider statutes, notice-prejudice rules, and independent review provisions all “substantially affect[] the type of risk pooling arrangements that insurers may offer.” Miller, 123 S.Ct. 1471, 1477-78. By contrast, bad faith claims, whether common law or statutory, merely provide an additional remedy for policyholders. See Gaylor, 112 F.3d at 466 (“[Oklahoma bad faith law] does not effect a change in the risk borne by insurers and the insured, because it does not affect the substantive terms of the insurance contract. On the other hand, a law mandating that a certain disease be covered under health insurance contracts would effect a spread of risk, both from insureds to insurers, and among the insureds themselves.”); Nguyen v. Healthguard of Lancaster, Inc., 282 F.Supp.2d 296, 2003 WL 22100157, at *8 (E.D.Pa. Aug.14, 2003) (Pennsylvania bad faith statute by providing an additional remedy for insureds if contract is breached, “bears no relation to the risk insured against, ... even though [it] may raise the premiums insureds must pay for their coverage.”). As the Colorado federal district court in Denette v. Life of Ind. Ins. Co., 693 F.Supp. 959 (D.Colo.1988), noted with regard to Colorado’s bad faith law, “[T]here is no indication that the statutes ... have any effect of transferring or spreading policy holder risk.... [T]hese statutes do not purport to regulate the substantive terms or content of insurance policies by mandating certain benefits.”. Id. at 966.
An examination of Tenth Circuit case law on the preemption of state law bad faith claims under ERISA underscores our conclusion that bad faith claims will rarely, if ever, be saved from preemption. In Kelley v. Sears, Roebuck & Co., 882 F.2d 453 (10th Cir.1989), this court held that ERISA preempted a Colorado bad faith claim, finding that Colorado’s law is “ 'very similar in substance’ to the Mississippi law at issue in Pilot Life.” Id. at 456 (quoting Denette, 693 F.Supp. at 966). Tracking the language of Pilot Life, the court held in Kelley that (1) “Colorado’s common law of bad faith does not regulate insurance,” insofar as (2) “[i]t neither spreads policyholder risk nor controls the substantive *1188 terras of the insurance contract,” (3) “[although associated with the insurance industry, [Colorado bad faith law] developed from the general principles of tort and contract law,” and (4) “Colorado’s common law of bad faith conflicts with ERISA’s civil enforcement remedies.” Id.
The Kidneighs fail to overcome Kelley’s precedential value in this case. According to the Kidneighs, the Supreme Court’s decisions in Ward and Miller worked a wholesale reconsideration of ERISA preemption analysis, and pre-Ward Tenth Circuit case law (and, by implication, pre-Ward Supreme Court cases such as Pilot Life) is not controlling here. This argument, however, is hard to square with the continued citation to Pilot Life in recent Supreme Court cases and citations to Kelley in recent Tenth Circuit cases. See Moffett, 291 F.3d at 1236-37 (10th Cir.2002) (“[W]e conclude that Wyoming’s law does not regulate insurance such that it falls within ERISA’s saving clause. Wyoming’s bad faith law does not have the effect of transferring or spreading policyholder risk.”) (citing Kelley, 882 F.2d at 456). Recent Supreme Court and Tenth Circuit cases indicate that, while the precise formulation of the test for analyzing ERISA preemption cases has evolved, the holdings of prior cases are still valid as to the preemption of bad faith claims.
The Kidneighs similarly overstate the effect of Miller on this case when they claim in their Supplemental Brief that “[p]rior case law from the Supreme Court and this Circuit holding that state bad faith laws are preempted based upon a MeCarran-Ferguson analysis are now without precedential value” and that “[t]he Supreme Court has thus eviscerated the precedential value of Pilot Life.” Aplt. Supp. Br. at 1-2. On the contrary, the Court in Miller notes that the now-discarded MeCarran-Ferguson factors used in Pilot Life were, in the earlier opinion, “mere ‘considerations [to be] weighed’ in determining whether a state law falls under the savings clause,” — U.S. at -, 123 S.Ct. at 1479 (quoting Pilot Life, 481 U.S. at 49, 107 S.Ct. 1549), and that in none of the Court’s ERISA preemption decisions were “the MeCarran-Ferguson factors an essential component of the [preemption] analysis,” id. (discussing Metro. Life, 471 U.S. at 742-43, 105 S.Ct. 2380, and Ward, 526 U.S. at 374, 119 S.Ct. 1380). Had the Supreme Court intended Miller to overrule Pilot Life or, in the Kidneighs’ words, eviscerate its precedential value, the Court could have said as much; the fact that Pilot Life is still cited in Miller with approval suggests otherwise. See also Leuthner v. Blue Cross and Blue Shield, 270 F.Supp.2d 584, 592-94 (M.D.Pa.2003) (applying Miller and relying upon reasons in Pilot Life to conclude that Pennsylvania bad faith statute did not affect risk pooling arrangement); McGuigan v. Reliance Standard Life Ins. Co., 256 F.Supp.2d 345, 348 (E.D.Pa.2003) (same).
Nor is the Kidneighs’ argument availing that Colorado law governing bad faith claims has evolved to the point where a case from 1989 (Kelley) is no longer applicable in 2003. The statute on insurance unfair competition and deceptive practices in Colorado cited by the Kidneighs — enacted before Kelley — merely provides remedies for and prevents unfairness in the insurance industry and states that juries in civil cases against insurance companies may be instructed that “the insurer owes its insured the duty of good faith and fair dealing.” Colo.Rev.Stat. Ann. § 10-3-1113(1) (West 2003). Colorado is hardly the only state to attempt to so distinguish generic contract bad faith and insurance bad faith; several states have similar insurance bad faith statutory provisions, and they are routinely held to be expressly preempted by ERISA. See, e.g., Gilbert v. Alta Health & Life Ins. Co., 276 F.3d 1292, 1297-99 (11th Cir.2001) (Alabama insur- *1189 anee bad faith statute preempted by ERISA); Gaylor, 112 F.3d at 466 (Oklahoma insurance bad faith statute preempted by ERISA); Swerhun v. Guardian Life Ins. Co. of Am., 979 F.2d 195, 199 (11th Cir.1992) (Florida insurance bad faith statute preempted by ERISA).
As to Mrs. Kidneigh’s loss of consortium claim, the Kidneighs concede that preemption of Mr. Kidneigh’s bad faith claim would entail preemption of Mrs. Kid-neigh’s loss of consortium claim:
[A]s a derivative claim, a claim for loss of consortium is only as valid as the claim from which it derives. In essence it is no more than an element of damages that comes with the principal claim....
[A] loss of consortium claim is not preempted if the claim it derives from is not preempted, but it is preempted if ERISA preempts the principal claim.
Aplt. Br. at 11-12 (citing Pacificare of Okla., Inc. v. Burrage, 59 F.3d 151 (10th Cir.1995)). This result is true whether the loss of consortium claim is understood to derive from the bad faith claim (as the Kidneighs contend) or from the ERISA claim (as UNUM contends). If the former, then the Kidneighs’ concession above controls. If the loss of consortium claim is derived from the ERISA claim, then the loss of consortium claim is best characterized as a state law claim preempted by ERISA. See Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1009-10 (9th Cir.1998); Burrage, 59 F.3d at 155 (“A loss of consortium claim against an [insurer] alleging negligent or fraudulent administration of the plan is preempted by ERISA.”). The plain language of ERISA and prevailing Supreme Court and Tenth Circuit authority lead, then, to the conclusion that Mr. Kidneigh’s Colorado state law bad faith claim is preempted by ERISA and that his wife’s loss of consortium is similarly preempted.
We are unpersuaded that Elliot v. Fortis Benefits Ins. Co., 337 F.3d 1138 (9th Cir.2003), suggests a different result. That case held that a state-law unfair trade practices act claim was preempted under ERISA’s civil enforcement provision, 29 U.S.C. § 1132, relying upon Pilot Life. Elliot, 337 F.3d at 1147. The court found that the state act “provides damages above and beyond those provided in ERISA, including punitive damages,” and was therefore preempted by § 1132. Id. Though the opinion contains an interesting discussion concerning the evolution of § 1144 preemption, the court did not reach whether (1) the state act was specifically directed toward entities engaged in insurance and (2) whether it substantially affects the risk pooling arrangement between the insurer and the insured. Elliot, 337 F.3d at 1146. Notwithstanding the dissent and its reliance on Elliot, we remain persuaded that neither factor is present here.
The district court’s decision is AFFIRMED in part (as to Mrs. Kidneigh’s loss of consortium claim) and REVERSED in part (as to Mr. Kidneigh’s bad faith claim).

. Thus, we reject Colligan v. UNUM Life Ins. Co. of Am., 2001 WL 533742 (D.Colo. April *1187 23, 2001), which held that Colorado’s bad faith law was not preempted without citation or discussion of Kelley.