**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 29 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

DOUGLAS W. MOFFETT,

       Plaintiff - Appellant,

v.

HALLIBURTON ENERGY
SERVICES, INC., a Delaware
corporation; TRUSTEES OF THE
HALLIBURTON COMPANY
EMPLOYEES TRUST; ENERGY
SERVICES GROUP HUMAN
RESOURCES COMMITTEE,
appointed pursuant to the Trustees of
the Halliburton Company Employees
Trust; HARTFORD LIFE AND
ACCIDENT INSURANCE
COMPANY, a Connecticut
corporation,

       Defendants - Appellees.

No. 00-8083

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. NO. 00-CV-1016-J)**

---

C. John Cotton, Cotton Law Offices, Gillette, Wyoming, for Plaintiff-Appellant.

Stuart B. Johnston, Jr., Vinson & Elkins, LLP, Dallas, Texas (Anissa A.
Allbritton, Vinson & Elkins, LLP, Austin, Texas; and Roger E. Shumate, Murane
& Bostwick, LLC, Casper, Wyoming, with him on the brief), for Halliburton
Defendants-Appellees.

Michael S. Beaver (Parker W. Dragovich with him on the brief), Holland & Hart, LLP, Greenwood Village, Colorado, for Hartford Defendant-Appellee.

_____

Before **HENRY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

_____

**ANDERSON** , Circuit Judge.

_____


Plaintiff Douglas W. Moffett appeals from the dismissal with prejudice of his complaint alleging various ERISA and Wyoming state law violations by defendants Halliburton Energy Services, Inc., two Halliburton entities, and Hartford Life & Accident Insurance Co.  We affirm.


## BACKGROUND

Moffett was employed by Halliburton as a cementer from 1989 to 1994. During this time, Halliburton maintained an Income Disability Plan, which was subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et. seq.  Defendant Trustees of the Halliburton Company Employees' Trust ("Trustees"), was initially responsible for administering the Plan.  The Trustees, in turn, created defendant Energy Services Group Human Resources

Committee ("Committee"), and delegated to the Committee the responsibility of functioning as Plan administrator. [1]

During his employment, which involved heavy labor, Moffett suffered back injuries, as a result of which he qualified for long term disability payments of, initially, $1,649.44 per month, effective June 9, 1994. Moffett also applied for and ultimately was awarded a Permanent Partial Disability Award from the Wyoming Workers' Compensation Fund totaling $46,748.40. Moffett utilized the award for bills and other obligations and expenses, while continuing to receive monthly payments of $1,649.44 from the Halliburton Plan. During the negotiation of Moffett's final Wyoming Workers' Compensation fund award, neither Halliburton nor Hartford ever alleged that they were entitled to offset that award against the disability payments they had been making to Moffett.

At some point in 1996 or 1997, defendant Hartford Life & Accident Insurance Co. agreed to provide and/or administer insurance and other benefits (neither the record nor the briefs assist us in the specifics of this agreement) to Halliburton employees, including Moffett. Hartford began providing some services to Halliburton in connection with its Plan, including the determination of benefit claims. In any event, on December 19, 1997, the Halliburton defendants

---

[1]We refer hereafter to these three Halliburton entities collectively as the "Halliburton defendants."

and Hartford entered into an agreement, entitled the "Claim Reserve Buy-Out Agreement," pursuant to which Halliburton's self-funded reserves, totaling $20,438,000, were transferred to Hartford as a premium for an insurance policy from Hartford. Hartford then insured benefit claims under the Plan. It is unclear who the Plan administrator was following the execution of the Buy-Out Agreement, although there is some evidence in the record that the Halliburton Company Benefits Committee was designated as the Plan administrator.

Hartford sent Moffett a letter on May 29, 1998, terminating his monthly disability payments, asserting that Hartford and Halliburton were entitled to a setoff for the workers' compensation permanent partial disability award he had previously received. On August 2, 1998, Moffett received a disability determination from Social Security, and he began receiving monthly payments of $775 in November 1998.

During the subsequent twenty-two months, Moffett and Hartford exchanged correspondence, during which Moffett endeavored to determine why his benefits had been discontinued and Hartford continued to refuse to provide Moffett with any disability payments. In particular, Moffett alleges he sent correspondence to "defendants" on June 23, July 17, and August 7, 1998, "generally requesting review and rescission of the May 29, 1998, decision," Plaintiff's First Amended Complaint ("A.C.") at § B, ¶ 25, Appellant's Br., App. 4 ("App. 4") at 11, and

informing "defendants" that the "Workers' Compensation award was not a 'tort settlement'" and that he had not received a "total disability" award from anyone. Id. Finally, on February 6, 2000, Hartford sent Moffett a letter explaining that it had incorrectly terminated his benefits, and it subsequently reimbursed Moffett approximately $16,000 for benefits wrongfully withheld. Moffett does not dispute that he has received all benefits to which he is entitled.

This action followed, in which Moffett alleged that Halliburton, the Trustees and the Committee breached fiduciary duties under ERISA, including the reporting and disclosure requirements, particularly, 29 U.S.C. §§ 1021, 1022, 1023, 1024, 1104, 1105, 1132 and 1133, and subjecting them to the penalties and remedial provisions of 29 U.S.C. §§ 1109 and 1132. He alleges that the belated award of $16,000 erroneously failed to include statutory penalties, consequential damages, attorney's fees and costs, and any other "remedial or equitable remedies available under ERISA." A.C. at § B, ¶ 50, App. 4 at 16. He also asserted claims for waiver and estoppel. [2]

Moffett also brought a claim against Hartford for "the tort of insurance bad faith," id. at § D-1, ¶ 6, App. 4 at 23, as well as a claim under Wyo. Stat. Ann. § 26-15-124 for failure to act in a timely manner and unreasonably denying an insurance payment. He alleged alternative claims against Hartford, asserting the

---

[2]He does not pursue these waiver and estoppel claims on appeal.

same ERISA violations as against the other defendants, in the event Hartford is deemed an administrator or fiduciary under ERISA. In addition to the damages discussed above, Moffett also sought punitive damages.

The Halliburton defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim or, alternatively, a motion for a more definite statement under Rule 12(e). They argued that Moffett failed to adequately allege any ERISA violation, and that he has identified no form of relief, equitable or otherwise, to which he would be entitled under ERISA where he has already received, albeit belatedly, the full benefits owed him. Defendant Hartford also asserted that Moffett's state law claims against it were preempted by ERISA. The district court agreed with all defendants and dismissed Moffett's complaint with prejudice.

Moffett appeals, arguing the district court erred in: (1) dismissing his complaint without "declaring [Moffett's] entitlement to benefits without set off by Defendants," Appellant's Br. at 12; (2) dismissing his complaint for "the failure or refusal of the Halliburton Defendants to comply with the mandatory reporting requirements of ERISA" and the refusal to provide requested information, id. at 15, 17; (3) dismissing his complaint alleging that the Halliburton defendants breached their fiduciary duties in connection with the Claim Reserve Buy Out Agreement; (4) dismissing his claims for statutory

penalties and money damages under ERISA; and (5) dismissing his state law claims against Hartford as preempted.

## DISCUSSION

"We review de novo the district court's grant of a 12(b)(6) motion to dismiss, bearing in mind that 'all well-pleaded allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party.'" Stidham v. Peace Officer Standards and Training, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)). Because we review the sufficiency of the complaint alone, we look only at the four corners of the complaint. [3] See Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956, 960 (10th Cir. 2001) ("[G]enerally courts should not look beyond the confines of the complaint itself when deciding a Rule 12(b)(6) motion to dismiss."). However, "we need not accept Appellant's conclusory allegations as true" when we review the grant of a Rule 12(b)(6) motion. Southern Disposal, Inc. v. Texas Waste Mgmt., 161 F.3d 1259, 1262 (10th Cir. 1998).

---

[3]Thus, despite Moffett's references to his motion for partial summary judgment and affidavits in support thereof, we do not consider those materials.

Focusing strictly on the allegations in Moffett's complaint, we agree with the district court and defendants that he has failed to state a claim for a violation of ERISA. We consider Moffett's claims, as articulated in his complaint, against the Halliburton defendants and against Hartford in turn.

## I. Claims Against Halliburton Defendants

Moffett's complaint contains three primary groups of claims against the Halliburton defendants. He also scatters throughout his complaint references to other ERISA provisions. First, Moffett alleges that "Defendants are in violation of ERISA, and subject to statutory penalties, including but not limited to those referenced in 29 U.S.C. § 1132, which provides for Defendants to be 'personally liable to (Plaintiff) . . . in the amount of . . . $100 per day' for enumerated violations." A.C. at § C-1, ¶ 2, App. 4 at 20.

Section 1132(a)(1)(A) of ERISA permits a participant or beneficiary to bring an action for the relief provided in subsection (c) which, in turn, provides a penalty for an administrator "who fails to meet the requirements of . . . section 1166 . . . or section 1021(e)(1) or "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish." 29 U.S.C. § 1132(c)(1)(A) and (B). Section 1166 of ERISA applies to group health plans, not disability income plans. Section 1021(e)(1) of ERISA

references transfers by employee pension benefit plans to health benefits accounts. Accordingly, neither section has any applicability to this case. Except as discussed more fully below, Moffett does not identify what information "required by this subchapter" he requested and did not receive. Thus, he has failed to state a claim under section 1132(a)(1)(A).

Section 1132(a)(1)(B) of ERISA permits a participant or beneficiary to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA further permits an action by a participant or beneficiary "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B).

Assuming Moffett seeks relief under section 1132(a)(1)(B), the conduct Moffett alleges is redressable under section 1132 consisted of defendants':

A. . . . fail[ure] to provide written notice . . . ;

B. . . . fail[ure] to provide "adequate notice in writing . . . setting forth the specific reasons for (the) denial, written in a manner reasonably calculated to be understood by the participant" as required by 29 USC § 1133(1);

C. . . . fail[ure] to provide "opportunity . . . for a full and fair review . . . of the decision denying the claim," as required by 29 USC § 1133(2); and

D. . . .fail[ure] to provide Plaintiff with information as required by ERISA.

A.C. at § C-1, ¶ 3, App. 4 at 20.  Thus, the only acts Moffett alleges violate section 1132(a)(1)(B) are purported violations of sections 1133(1) and (2).

We first note that Moffett's first and fourth claims, alleging "failure to provide written notice" and failure to provide "information as required by ERISA," are vague and conclusory.  We have held that an ERISA claim based upon an alleged failure to provide information is subject to dismissal under Rule 12(b)(6) where the plaintiff fails to identify what information he alleges was wrongfully withheld.    See Maez v. Mountain States Tel. and Tel., Inc.    , 54 F.3d 1488, 1507 (10th Cir. 1995).

Additionally, and more fundamentally, when Moffett accuses the defendants of failing to provide him with information about the reasons for the denial of his benefits and/or any avenues for review of that denial, he inadequately alleges a violation of section 1133 because that section requires "every employee benefit    plan " to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1).  Similarly, the plan must "afford a reasonable opportunity to any participant whose claims for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2).  Moffett

makes no allegations about the Plan's failure to provide notice or other information. He alleges that the Halliburton defendants failed in that regard. However, an alleged failure by the employer or the plan administrator to provide such notice and/or opportunity is not a violation of section 1133. See Walter v. Int'l Ass'n. of Machs. Pension Fund, 949 F.2d 310, 315 (10th Cir. 1991).

In his second group of claims, Moffett's amended complaint charged that "Defendants were under and owed Plaintiff a fiduciary duty pursuant to the provisions of ERISA 29 USC § 1001 et. seq." A.C. § C-3, ¶ 2, App. 4 at 21. He further alleges that "Defendants breached the fiduciary duty owed pursuant to ERISA and to Plaintiff." Id. at ¶ 30. Those conclusory allegations fail to establish the basis for an alleged breach of fiduciary duties. [4]

Moffett's third group of claims is entitled "waiver, estoppel and attorney fees and costs." As indicated, he does not pursue these on appeal.

---

[4]He also alleges that, in connection with the execution of the Buy-Out Agreement, the Halliburton defendants "breached their fiduciary duties under ERISA, including reporting requirements and other fiduciary duty responsibilities." A.C. at § B, ¶ 21-2, App. 4 at 9. We explain, infra, that Moffett has limited the relief he seeks for the alleged reporting violations. His other allegation regarding the breach of "other fiduciary duty responsibilities" is wholly conclusory and vague. Moffett expands upon his fiduciary duty allegations in his brief on appeal, more clearly arguing that, in his view, defendants' alleged violations of ERISA's reporting requirements and their conduct in entering into the Buy-Out Agreement constituted a breach of fiduciary duty. However, because we are reviewing a Rule 12(b)(6) dismissal, we look only at Moffett's complaint.

-11-

In addition to those three groups of claims, Moffett alleges general violations of ERISA as follows: failure to provide "written notice and information required pursuant to ERISA . . . at the time of commencement of coverage under the Plan," id. at § B, ¶ 3, App. 4 at 4, as well as breach of "fiduciary obligations owed pursuant to ERISA . . . at the time of commencement of coverage under the Plan." Id. at ¶ 3a. He further asserts that the Halliburton defendants failed to inform him that they had entered into the Buy-Out Agreement, but he does not articulate how that violated ERISA. He also alleges that, following the execution of the Buy-Out Agreement, the Halliburton defendants did not "provide . . . the name and address of the 'Plan Administrator,' and/or . . . other information required pursuant to ERISA." Id. at ¶ 21-6, App. 4 at 10. These vague and general allegations fail to state a claim for a violation of ERISA.

Moffett also lists the following series of alleged statutory violations: following the execution of the "Claim Reserve Buy Out Agreement," he claims the Halliburton defendants "failed to provide the protections afforded pursuant to ERISA and the Plan, including but not limited to the protections and guarantees afforded by 29 U.S.C. § 1021-1024, 1104, 1105, 1109, 1132 and 1133." Id. at ¶ 50-1, App. 4 at 17. He further alleges that defendants failed to furnish plan beneficiaries and participants with a "written plan or summary thereof;" with

"information regarding modifications of and to the plan or summary;" and required "written notice." Id. at ¶ 52(A)-(C), App. 4 at 18. He repeats his allegations of failure to provide him with the reasons for the denial of his benefits and any review mechanism thereof. Id. at ¶ 52(D)-(E). Moffett also alleges that defendants committed some error and/or violation in entering into the Buy-Out Agreement, but he alleges no provision of ERISA allegedly violated thereby. Id. at ¶ 52(F).

Sections 1021-24 of ERISA set forth reporting and disclosure requirements for plan administrators, see 29 U.S.C. §§ 1022-24, and include the obligation to provide participants with summary plan descriptions, including descriptions of any changes and modifications of the plan. Moffett concedes that he did not notify defendants that he had never received any such information, nor did he allege that he ever asked for it prior to this lawsuit. At oral argument on appeal, Moffett conceded that the only remedy he seeks for these violations is a declaratory judgment directing defendants to provide information to Moffett and all other plan participants. Since he failed to seek such a declaratory judgment before the district court, however, we will not consider his request on appeal.

Sections 1104, 1105 and 1109 provide for remedies for a breach of fiduciary duty, see 29 U.S.C. §§ 1104-05 and 1109, and we have explained, supra, that Moffett failed to state a claim for breach of any fiduciary duties. We have

-13-

also explained, <u>supra</u>, that Moffett failed to state a claim for a violation of section 1133 which would implicate the remedial provisions of section 1132.

Finally, Moffett seeks a variety of remedies for all of the alleged ERISA violations, but he pursues none which are actually available under ERISA. His complaint requests "any relief authorized pursuant to 29 U.S.C. § 1109 or § 1132, and specifically including equitable and remedial remedies." A.C. at § C-3, ¶ 5, App. 4 at 22. More specifically, he seeks:

> (a) the maximum penalties allowed pursuant to ERISA, (b) attorney fees, (c) costs and expenses, and, in the event that it is determined that ERISA is inapplicable and/or does not bar other claims, (d) loss of income, loss of property, loss of credit and credit reputation, mental and emotional distress, pain and suffering, loss of enjoyment of life and punitive damages, (f) remedies and relief afforded by 29 U.S.C. § 1001 et. seq. for breach of duty by [d]efendants . . . including remedial, equitable or other remedies provided for by 29 U.S.C. § 1109 and 1132, and (e) such other damages and relief as may be allowed by law.

<u>Id.</u> at § B, ¶ 54, App. 4 at 19.

As indicated above, he failed to adequately allege a violation of section 1132(c), which provides for a statutory penalty of $100 per day. With respect to the other, non-statutory remedies he pursues, he did not identify in his complaint what specific equitable relief he desires. [5] To the extent we read his

_____

[5]To the extent he now requests, in his brief on appeal and at oral argument, declaratory relief of some kind, we must reject it because he failed to seek it in his complaint.

complaint as seeking non-statutory remedies and/or damages, in the form of monetary compensation for economic or other harm suffered because of the delay in his receipt of his benefits, we agree with the district court that those remedies are not available under ERISA. See Great-West Life & Ann. Ins. Co. v. Knudson, 534 U.S. 204, __, 122 S. Ct. 708, 718 (2002) ("[Section 1132(a)(3)], by its terms, only allows for *equitable* relief."); Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985) ("[T]he relevant text of ERISA, the structure of the entire statute, and its legislative history all support the conclusion that in [29 U.S.C. § 1109(a)] Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra-contractual damages caused by improper or untimely processing of benefit claims."); Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 943 (8th Cir. 1999) ("The Supreme Court confirmed that section 1132(a)(3) recovery is limited to classic equitable remedies such as injunctive, restitutionary, or mandamus relief, and does not extend to compensatory damages.").

We accordingly affirm the district court's grant of the Halliburton defendants' motion to dismiss for failure to state a claim. We turn now to Moffett's claims against Hartford.

## II.  Claims Against Hartford

Moffett asserts two Wyoming state law claims against Hartford:  one for the "tort of insurance bad faith" and one for breach of the statutory duty to accept or reject insurance claims within a specified time period and not to refuse to pay "unreasonabl[y] or without cause."  Wyo. Stat. Ann. § 26-15-124.  Moffett also seeks punitive damages, an issue he does not pursue on appeal, and he alleges "alternative" claims against Hartford, identical to the ERISA claims he brought against the Halliburton defendants.  The district court granted Hartford's motion to dismiss these claims for failure to state a claim.  We affirm.

"ERISA comprehensively regulates, among other things, employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death."    Pilot Life Ins. Co. v. Dedeaux    , 481 U.S. 41, 44 (1987) (quoting 29 U.S.C. § 1002(1)).  To facilitate that comprehensive regulation, Congress enacted a preemption clause which preempts any state law which "relate[s] to any employee benefit plan." 29 U.S.C. § 1144(a).  Two further provisions contain exceptions to that broad preemption clause:  "The saving clause excepts from the pre-emption clause laws that 'regulat[e] insurance. . . .' The deemer clause makes clear that a state law that 'purport[s] to regulate insurance' cannot deem an employee benefit plan to be an insurance company."

Pilot Life , 481 U.S. at 45 (quoting 29 U.S.C. §§ 1144(b)(2)(A) and (B)). The Supreme Court has expressly observed that ERISA's preemption provisions are "deliberately expansive." Id. at 46; see also Shaw v. Delta Air Lines, Inc. , 463 U.S. 85, 98 (1983).

Because there is no question that the tort of insurance bad faith "relates to" the Halliburton Plan, an ERISA-regulated employee benefit plan, Moffett's state law claim for bad faith is preempted unless exempted from preemption by the saving clause. That clause exempts from preemption "any law . . . which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). Moffett argues that the Wyoming law of bad faith insurance regulates insurance so as to escape ERISA's preemption clause. We agree with the district court that it does not.

"Our precedent provides a framework for resolving whether a state law 'regulates insurance' within the meaning of the saving clause." Unum Life Ins. Co. v. Ward , 526 U.S. 358, 367 (1999). The first inquiry is "whether, from a 'common-sense view of the matter,' the contested prescription regulates insurance." Id. (quoting Metropolitan Life Ins. Co. v. Massachusetts , 471 U.S. 724, 740 (1985)). "Second, we consider three factors employed to determine whether the regulation fits within the 'business of insurance' as that phrase is used in the McCarran-Ferguson Act." Id. The three McCarran-Ferguson factors are (1) "whether the practice has the effect of transferring or spreading a

policyholder's risk;" (2) "whether the practice is an integral part of the policy relationship between the insurer and the insured;" and (3) "whether the practice is limited to entities within the insurance industry." Metropolitan Life Ins. , 471 U.S. at 743 (internal citations and quotations omitted); see also Pilot Life , 481 U.S. at 48-49. A state regulation need not satisfy all three factors in order to satisfy the "regulate insurance" requirement of ERISA's saving clause. Rather, the factors are "guideposts, not separate essential elements." Unum Life Ins. , 526 U.S. at 374 (internal quotation omitted).

Relying heavily on the Supreme Court's analysis in Pilot Life of the Mississippi law of bad faith , which the Court held did not regulate insurance and therefore was preempted by ERISA, the district court concluded that Wyoming's law of bad faith was also preempted. We agree. As the Supreme Court observed in Pilot Life :

> A common-sense view of the word "regulates" would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry. Even though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law. Any breach of contract, and not merely breach of an insurance contract, may lead to liability for punitive damages under Mississippi law.

Pilot Life , 481 U.S. at 50. The Court has further explained that a law regulates insurance if it "homes in on the insurance industry and does 'not just have an

-18-

impact on [that] industry.'" Unum Life Ins., 526 U.S. at 368 (quoting Pilot Life, 481 U.S. at 50). Thus, in Unum Life Ins. the Court found that California's notice-prejudice rule, whereby an insurer must prove prejudice from an insured's failure to give timely notice of a claim in order to enforce its proof-of-claim requirements, did specifically regulate insurance and therefore was not preempted by ERISA. Id. at 372.

Moffett argues that Wyoming's tort of bad faith insurance "homes in on the insurance industry" and, like California's notice-prejudice rule, is more uniquely directed at that industry than is the Mississippi law of bad faith. We disagree. While the Wyoming tort-based claim of bad faith insurance breach may be more narrowly applied than Mississippi's law of bad faith, it does not "home in" on the insurance industry alone, as does California's notice-prejudice law.

As the Wyoming Supreme Court has observed, Wyoming "has recognized a tort-based claim for breach of the implied covenant of good faith in limited circumstances." Scherer Constr., LLC. v. Hedquist Constr., Inc., 18 P.3d 645, 652 (Wyo. 2001). Those limited circumstances include employment cases "where a 'special relationship' exists between the employer and the employee," id., and insurance cases. The Wyoming Supreme Court has noted that "[a] special relationship is also an element of a tort-based claim in the insurance context, which automatically exists by virtue of the unequal bargaining power the insurer

-19-

has over an insured." Id. at n.1. Thus, the tort of bad faith breach as developed in Wyoming is not unique to the insurance industry; rather, it is unique to those settings in which a "special relationship" exists, including the insurance and employment contexts.

Applying the McCarran-Ferguson factors to Wyoming's bad faith law, and considering Pilot Life and other cases applying those factors to comparable state laws, we conclude that Wyoming's law does not regulate insurance such that it falls within ERISA's saving clause. Wyoming's bad faith law does not have the effect of transferring or spreading policyholder risk. See Pilot Life, 481 U.S. at 50 (holding that Mississippi bad faith law "does not effect a spreading of policyholder risk"); Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 466 (10th Cir. 1997) ("Oklahoma's bad faith law does not regulate the spreading of policyholder risk."); Kelley v. Sears, Roebuck & Co., 882 F.2d 453, 456 (10th Cir. 1989) (holding that Colorado's common law of bad faith does not "spread[] policyholder risk").

Nor is Wyoming's bad faith law an integral part of the policy relationship between the insured and the insurer. The "law of bad faith does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive

-20-

damages." Pilot Life , 481 U.S. at 51; see also Gaylor , 112 F.3d at 466; Kelley , 882 F.2d at 456. Further, although associated with the insurance industry, along with the employment industry, Wyoming's bad faith law has its roots in general principles of tort and contract law. Finally, as we have held with respect to Oklahoma and Colorado bad faith laws, and as the Supreme Court held with respect to Mississippi's bad faith law, Wyoming's bad faith law conflicts with ERISA's civil enforcement remedies. See Pilot Life , 481 U.S. at 54 ("The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of polices embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive."); see also Gaylor , 112 F.3d at 466; Kelley , 882 F.2d at 456.

We similarly hold that Moffett's claim under Wyo. Stat. Ann. § 26-15-124 is preempted because it conflicts with ERISA's exclusive remedial scheme. [6] We

---

[6]Our conclusion that ERISA preempts section 26-15-124 includes that section's attorney's fee provision, which states that "if it is determined that the company refuses to pay the full amount of a loss covered by the policy and that the refusal is unreasonable or without cause, any court in which judgment is rendered for a claimant may also award a reasonable sum as an attorney's fee." We agree with the majority of courts addressing this issue, which have concluded that ERISA preempts state attorney fee statutes, at least to the extent that they fail to use the applicable ERISA standards for awarding attorney's fees. See, e.g., San Francisco Culinary, Bartenders and Serv. Employees Welfare Fund v. Lucin, 76 F.3d 295, 298 (9th Cir. 1996); Allison v. Continental Cas. Ins. Co., 953 F. Supp. 127, 129 (E.D. Va. 1996); Gelzinis v. John Hancock Mut. Life Ins. Co., No. CIV. A. 93-0569, 1993 WL 131566, at *5 (E.D. Pa. 1993); Milano v. Connecticut

(continued...)

further uphold the dismissal of Moffett's alternative ERISA claims against

Hartford, for the same reasons we affirmed dismissal of those claims against the

Halliburton defendants.


**CONCLUSION**

For the foregoing reasons, we AFFIRM the dismissal of Moffett's

complaint against defendants.

---

[6](...continued)
Gen. Life Ins. Co., No. 92 C 1606, 1992 WL 168801, at **4-5 (N.D. Ill. 1992).
Cf. Ford v. Uniroyal Pension Plan, 154 F.3d 613, 617 (6th Cir. 1998) (holding that incorporation of state standards for calculating attorney fee award in ERISA case would conflict with ERISA's exclusive remedial scheme).